# IN THE COURT OF APPEALS OF IOWA

————————————

No. 26-0383
Filed May 13, 2026

————————————

**In the Interest of K.J., Minor Child,**

**B.J., Father,**
Appellant.

————————————

Appeal from the Iowa District Court for Linn County,
The Honorable Carrie K. Bryner, Judge.

————————————

**AFFIRMED**

————————————

David R. Fiester, Cedar Rapids, attorney for appellant father.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney
General, attorneys for appellee State.

Robin Himes, Cedar Rapids, attorney and guardian ad litem
for minor child.

————————————

Considered without oral argument
by Schumacher, P.J., and Ahlers and Badding, JJ.
Opinion by Badding, J.

**BADDING, Judge.**

A father appeals the termination of his parental rights to a daughter born in April 2025.[1]  The child first came to the attention of the Iowa Department of Health and Human Services when she was three days old due to concerns about the parents' ability to care for a newborn.  Both the mother and the father live with intellectual disabilities that make learning new skills difficult.  And according to hospital staff, they declined to participate in feeding, changing, or bonding with their new baby after she was admitted to an intensive care unit.  The child was removed from the parents' custody and placed with her maternal grandparents, who were already caring for an older sibling.

To help with reunification, the juvenile court ordered the father to complete a mental-health evaluation, a substance-abuse evaluation, IQ testing, and a SafeCare parenting course.  But he failed to meet these requirements—largely because of his volatile behavior.  The father stormed out of a psychological evaluation.  He was discharged from the SafeCare program due to repeated outbursts.  And he was banned from attending the child's medical appointments after he threatened her providers.

After a termination hearing in October 2025, the juvenile court found the father had "failed to make any effort to complete the responsibilities prescribed in the case permanency plan," "resisted all parenting direction," and "exhibited emotional dysregulation on a consistent basis."  The court terminated his parental rights under Iowa Code section 232.116(1)(e) and (h)

---

[1] The juvenile court also terminated the parental rights of the child's mother, but she does not appeal.

(2025). We review that ruling de novo. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022).

The father challenges the statutory grounds for termination.[2] Although the court cited two grounds in its order, we only need to find one to affirm. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). Here, we focus on section 232.116(1)(h). The father disputes the fourth element—whether the child could be safely returned to his custody at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h)(4); *In re A.S.*, 906 N.W.2d 467, 473 (Iowa 2018). The father argues that he "made several positive steps" towards reunification by securing an apartment, a working vehicle, and "all the supplies K.J. could need." *See* Iowa Code § 232.116(1)(h)(4).

But this child was not removed for a lack of equipment. The concern was with the father's parenting abilities—and he wasted the chance to develop those skills by resisting services and routinely mistreating providers. As a result, the father continues to lack the skills necessary to care for a young child with special medical needs. He acknowledged that he did not know how to clean or operate his daughter's feeding tube. And he questioned whether he could stomach "doing diapers." A caseworker also testified to unresolved concerns with the father's hygiene, the unsanitary condition of

---

[2] We have generously construed the father's petition to allow a merits review. Its single issue heading asserts the juvenile court "erred when it failed to find a permissive exception to termination." But the father never asked the court to apply a permissive exception—nor did the court address that question—so that claim is not preserved. *See In re J.R.*, 20 N.W.3d 839, 843 (Iowa Ct. App. 2025) (en banc) (finding a parent waived her permissive-exception argument by failing to raise it at the termination hearing). In any event, we read the substance of the father's petition to challenge the other steps of the termination analysis. Although we could find these arguments waived for failure to comply with our rules for issue presentation, *see In re L.A.*, 20 N.W.3d 529, 534 n.2 (Iowa Ct. App. 2025) (en banc), we choose to address the merits.

the parents' home (from which they had recently been evicted), and his inattention to the child during supervised visits. On this record, we agree with the juvenile court that the child could not have been safely returned to the father's custody at the time of the termination hearing. *See In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021) (affirming termination where the mother "had not really advanced as a parent").

The father also asserts that termination is not in the child's best interest, citing his emotional bond to her. We do not doubt he loves his daughter, but "the existence of a bond is not enough" to tilt the best-interests balance. *Id.*; *see also In re L.A.*, 20 N.W.3d 529, 535 (Iowa Ct. App. 2025) (en banc) (explaining that the parent-child bond is a "relevant consideration in the best-interests analysis," but giving little weight to a father's bond argument where he had never cared for the child and had not advanced beyond supervised visits). Instead, we must give "primary consideration" to the child's safety, long-term growth, and physical, mental, and emotional needs. Iowa Code § 232.116(2). When it comes to those factors, the juvenile court said it best:

> [K.J.] is a child in need of a safe, stable home that is also clean and sterile. Further, she needs parents who can maintain stability, care for themselves and importantly understand and care for her many medical needs. She deserves a family to love and care for her each and every day. Her parents are not in a position to provide her with that stability and safety at this time. . . . [T]he child's need for permanency, security, safety, physical and intellectual health dictate that it is in her best interests to have parental rights terminated.

Reviewing the record with fresh eyes, we reach the same conclusion. Termination will provide this young girl with the safety and permanency she deserves. We therefore affirm.

**AFFIRMED.**

4